WALTER KIDDE & CO., Inc., v. AMERICAN LA FRANCE & FOAMITE INDUSTRIES, Inc.

No. 4503.

District Court, E. D. New York.

April 19, 1930.

Redding, Greeley, O'Shea & Campbell, of New York City (William B. Greeley and Ambrose L. O'Shea, both of New York City, of counsel), for plaintiff.

Jeffery, Kimball & Eggleston, of New York City (Harry G. Kimball, of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

This is an action for the alleged infringement of United States letters patent No. 1,674,427, dated June 19, 1928, for a fire-extinguishing apparatus issued to the plaintiff, a corporation of the state of New York, having its principal office in the borough of Manhattan, as the assignee of W. H. Freygang.

American La France & Foamite Industries, Inc., the defendant herein, is also a corporation of the state of New York, and has a regular and established place of business in this district.

The action is based upon the alleged infringement by the defendant of the single claim of the patent in suit, which is as follows:

"In an apparatus for extinguishing fire by a fire extinguishing agent under pressure and comprising a container and a delivery passage, the combination of a chambered coupling member interposed between the container and the delivery passage and in communication with said passage and container, a frangible disc interposed between the container and said coupling member, a spindle carried by the coupling member and having a tubular cutter within the coupling with a port continuously and permanently in communication with the chamber thereof and the delivery passage and movable through actuation of the spindle to cut out the central portion of the frangible disc and permit it to be driven, by the pressure of the agent in the container, within the cutter beyond the port to establish free and unrestricted communication from the container to the delivery passage through the bore of said tubular end and port, and means to actuate the spindle."

The patent relates to the release of carbon dioxide for the extinguishing of fire. Carbon dioxide or carbonic acid gas is supplied in containers in which it is retained in liquified form under a pressure at normal temperature of about 900 pounds to the square inch. To be effective the carbon dioxide must be delivered quickly upon the fire, and the delivery must be in such manner as to avoid the formation of snow in the pipe system and the clogging of the pipe system, which would be caused by the formation of such snow. To accomplish this the release of the carbon dioxide must be effected with the least possible obstruction to its flow at any point in the pipe system.

Freygang testified that, in his effort to make it practicable to use carbon dioxide in extinguishing fire, and in order to secure certainty of action in the immediate release of carbon dioxide, it was necessary to cut out completely the safety disc of copper or other relatively soft metal which seals the outlet from the container and provides a safety valve which may be ruptured by the carbon dioxide if excessive pressure should be developed in the container by reason of an increase of temperature above the normal.

Freygang's problem which he sought to solve was to completely cut out the safety disc. He accomplished this by providing a tubular cutter fitting snugly in the coupling member connecting the container and the pipe system and means to move it against the safety disc, so as to cut it completely. He made provision in the tubular cutter for ports for communication with the chamber of the coupling and the pipe system, so that immediately upon the disc being cut out by the cutter the cut-out portion would be driven by the force of the carbon dioxide within the cutter and beyond its ports.

This provided a passage for the delivery of the carbon dioxide from the container to the pipe system, which is unobstructed, and permits a full and free flow of the carbon dioxide. The safety disc is termed a frangible disc in the claim of the patent. The claim does not restrict the nature of the means whereby the tubular cutter is moved against the frangible disc. It refers to a spindle as carried by the coupling member, and describes the cutter as "movable" through actuation of the spindle. The drawing of the patent shows a quick thread on the spindle $g$ for coaction with a quick thread $F^3$ on the coupling member, but the claim is not limited to the employment of a quick thread and would be satisfied by any means for advancing the spindle and cutter.

Defendant introduced in evidence a photostatic copy of the file record of the patent in suit and copies of the patents referred to therein, which are as follows: French patent to Durand, No. 469,693, granted March 16, 1914; United States patent to George T. Pearsons, No. 1,289,253, granted December 31, 1918; United States patent to Mahlon L. Dunbar, No. 1,493,327, granted May 6, 1924; United States patent to Wilhelm Schramm, No. 801,612, granted October 10, 1905; United States patent to William F. Singer, No. 467,142, granted January 12, 1892; United States patent to Adolph F. Prahm, No. 780,-683, granted January 24, 1905; United States patent to Willis Lawrence, No. 1,168,-015, granted January 11, 1916; British patent to Reuben Squire, No. 27,354, granted 1908; French patent to M. Wilhelm Schwarz-

haupt, No. 418,801, granted July 30, 1910; French patent to M. Paul Jules Ruez, No. 449,925, granted October 28, 1912; British patent to Victor E. J. Durafort, No. 26,365, granted 1909. The defendant also introduced in evidence a copy of United States patent to Jacob B. Van Dyne, No. 114,627, granted May 9, 1871.

These patents were offered in evidence only for the purpose of showing the prior art. Upon the trial, counsel stated:

"Mr. Kimball: And now I offer this bunch of patents, photostatic and printed copies of patents, under the stipulation. They were cited against the application of the patent in suit by the Patent Office.

"Mr. Greeley: Of course, your Honor, I object to the introduction of any patents except so far as they are to be taken as illustration of the prior art, not for the purpose of invalidating or restricting the patent in suit.

"The Court: Is that the purpose?

"Mr. Kimball: That is the purpose, to show the prior art.

"The Court: They will be received in evidence to show the prior art."

The patent of Van Dyne, No. 114,627, granted May 9, 1871, shows an extinguisher of the generator type, in which an acid is released for admixture with the surrounding alkaline water for the purpose of generating carbonic acid gas to aerate the water and, by its expansive force, eject a carbonated stream. The construction shown comprises an acid jar $k$ which is held mouth downward, the mouth being closed by a lead cap $e$. When the apparatus is to be used the acid jar is lowered toward a cutter $r$, the purpose of which "is to pierce said cap * * * and thus allow the acid to escape from the jar. * * * The inclination of the cutter causes the piercing of the cap to take place gradually." In claim 2 the cutter is described as a "perforative instrument." Comparing this structure with plaintiff's claim it will be seen that there is no "agent under pressure"; no "chambered coupling member"; no "spindle carried by a coupling member"; that the cutter is not "movable"; that the cutter does not "cut out the central portion of the frangible disc"; and that no portion of the disc is "driven by the pressure of the agent in the container, within the cutter."

In the French patent of Durand, No. 469,693, granted March 16, 1914, a nonacid extinguishing liquid under air pressure is released from the reservoir shown in part at $16$,

by the action of the inclined end $7^a$ of the hollow piston $7$ which when advanced will "break the disc $18$ at the middle without at the same time entirely detaching its central portion, it being understood that the lowermost portion of the inclined end of the piston will not penetrate into the disc. The severed portion of the disc will be lowered under pressure of the liquid which flows through the orifice $7^b$." While the structure thus described bears some resemblance to that shown in plaintiff's patent, it will be observed that the purpose and accomplishment of plaintiff's device, namely, the complete cutting out of the central portion of the sealing disc, in order to establish "free and unrestricted communication from the container to the delivery passage through the bore of said tubular end and the port," is not only not attained by the structure of this French patent, but is expressly negatived by the statement in the specification thereof. Figure 3 of the drawing of this French patent shows that the partly severed portion of the disc $18$ is in fact bent into the passage in the hollow piston in such manner that it will obstruct the flow of the fire-extinguishing liquid and prevent that free and quick delivery which is so vital to the full effectiveness of plaintiff's patented device.

In the patent of Pearsons, No. 1,289,253, granted December 31, 1918, until the extinguisher of this patent is inverted there is no pressure. Such inversion effects mixture of acid and soda and the generation of gas, the pressure of which drives forward a tubular plunger $17$ with a pointed or beveled end against a tin foil seal and puncture it. This permits the gas to pass into the reservoir from which its pressure drives the fire-extinguishing liquid.

In the patent of Dunbar, No. 1,493,327, granted May 6, 1924, compressed air in one cylinder propels the fire-extinguishing chemical from another cylinder to a spray pipe.

In the patent of Schramm, No. 801,612, granted October 10, 1905, a piston driven by fluid pressure forces the impregnating fluid in the other end of the cylinder through a pipe and hollow needle into the meat.

The patent of Singer, No. 467,142, granted January 12, 1892, discloses only the use of carbon dioxide to mingle with water, and by its pressure force the mixture to sprinkler heads. The gas is released by a hand operated valve only.

The patent of Prahm, No. 780,683, granted January 24, 1905, shows only a perforating point $32$ to perforate a lead sealing disc

*23*, and when this is done the "perforating-point is then withdrawn and moved to one side and the apparatus is ready for use."

The patent of Lawrence, No. 1,168,015, granted January 11, 1916, shows a "combined piercing and valve member *25* in the form of a stout rod or pin formed with a pointed conical end" to penetrate a soft metal sealing disc *10* and permit the escape of the extinguishing liquid under pressure from the container *1*.

The British patent of Squire, No. 27,354, granted 1908, shows a reversible gas generating extinguisher, provided with a plunger *A* driven forward by a steep pitch screw *H* either to break or to close a bottle which contains the acid by the mixture of which with water the gas is generated.

In the French patent of Schwarzhaupt, No. 418,801, granted July 30, 1910, the acid container *g* is broken by a striker *f* releasing the acid into a liquid container *a* or *v*, from which it is discharged.

In the French patent of Ruez, No. 449,-925, granted October 28, 1912, a gas container *9* is perforated by a striker *10* and the gas is released into the liquid receptacle *1*, from which the liquid is discharged by the pressure of the gas.

In the British patent of Durafort, No. 26,365, granted 1909, a flask *4* of carbon dioxide is forced against a punch *17*. The carbon dioxide thus released ruptures a diaphragm *10* and drives the fire-extinguishing liquid from the container.

None of the patents discussed answer the claim of the plaintiff.

The advantage of the patent in suit is the cutter valve by which means the carbon dioxide operates a battery of containers very quickly. Speed is quite essential in extinguishing a fire.

The plaintiff's patent device has been on the market since about January, 1924, resulting in the installation of between fifty to sixty thousand units in which the device of the patent is used, involving a business last year in excess of $1,000,000.

Plaintiff's witness, Freygang, testified that defendant's device first appeared on the market in June, 1928. The structure of the defendant's device is found in each of the elements of the patent structure. In the plaintiff's structure there is found a quick thread screw for advancing the cutter. The defendant has substituted in place thereof a device which causes the cutter to move forward without rotation. The single claim of plaintiff's patent is in no wise limited with respect to the means employed for moving the cutter forward.

Freygang testified that since the patent in suit was issued the plaintiff marked "U. S. Patent No. 1,674,427" on every device manufactured under the patent in stock at the time of the issue of the patent and thereafter, showing full compliance with section 4900 of the Revised Statutes (35 USCA § 49).

Defendant claims that, if there was an infringement of plaintiff's patent, it was accidental.

Plaintiff purchased an infringing device from defendant on June 12, 1929, and a second infringing device on August 9, 1929.

Boniface, a witness for the defendant, testified that he had knowledge of plaintiff's patent in the early part of the year 1929, and that he made an effort to change the construction. This change was not completed, however, until July, 1929. Boniface further testified that, after receipt of the defendant's notice of infringement, he issued orders to change the construction of the defendant's device. The notice of infringement was received by the defendant in July, 1929. It appears from the defendant's own testimony that it was not until September 23, 1929, that all of the devices in stock at defendant's several district offices had been changed, so that they avoided infringement of the patent in suit.

The patent is valid. The defendant has infringed the single claim of the patent in suit.

Decree for plaintiff. Settle decree on notice.